1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF WASHINGTON

7  JAMIE C. PENDLETON,                  | NO:  2:18-CV-0245-TOR
8                        Plaintiff,      | ORDER DISMISSING FIRST
9           v.                          | AMENDED COMPLAINT
10 CITY OF SPOKANE POLICE
   DEPARTMENT, OFFICER
11 MICHAEL ROBERGE, DETECTIVE
   STACY CARR, SPOKANE COUNTY
12 PROSECUTOR'S OFFICE, CASEY
   EVANS, LAWRENCE HASKELL,
13 JACOB KUHN, BRENDA NELSON,
   CITY OF SPOKANE, and SPOKANE
14 CITY PROSECUTOR'S OFFICE,
15                        Defendants.

16      BEFORE THE COURT is Plaintiff's First Amended Complaint.  ECF No. 20.
17
   Plaintiff, a pretrial detainee at the Spokane County Jail, is proceeding *pro se* and *in*
18
   *forma pauperis;* Defendants have not been served.
19
        Plaintiff now claims violations of the Equal Protection and Due Process
20
   clauses of the Fourteenth Amendment; violations of the Fifth and Thirteenth

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 1

Amendments; and violations of civil rights statutes, including 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986.  ECF No. 20 at 10.  Although Plaintiff references "retaliation" throughout his First Amended Complaint, he asserts no claim under the First Amendment.  He seeks declaratory relief and monetary damages.

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Federal Rule of Civil Procedure 8 does not require detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).

While a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference.  *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.)  Accepting Plaintiff's factual allegations as true, the Court finds that he has failed to cure the deficiencies of his initial complaint and the First Amended Complaint fails to state a federal constitutional or statutory claim upon which relief may be granted.

//

//

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 2

## EQUAL PROTECTION (2014)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). "To state a claim . . . for a violation of the Equal Protection Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to discriminate against him based on his membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citations omitted). Here, Plaintiff states that he is African American and that he ran a daquiri bar in 2014 which attracted "large black crowds and loud music." ECF No. 20 at 21.

Plaintiff claims the Spokane Police Department and its employees embarked in a campaign to close his business, the Spokane Downtown Daquiri Factory, in 2014. *Id.* at 10. He complains that officers were instructed to include the name of the business "Daquiri Factory" in police reports which were then shared with the Washington State Liquor Control Board and resulted in increased inspections by the Board. *Id.* at 10-11. He also complains of an increased police presence and special emphasis parking patrols on evenings when there were large crowds of African Americans. *Id.* Plaintiff did not allege facts from which the Court could infer the police presence was excessive or that police otherwise acted unreasonably.

Plaintiff admits no citations were issued in 2014 and indicates that the landlord wrongfully evicted the business. *Id.* at 11, 12, 17, 21 and 23. Indeed, it appears Plaintiff's landlord evicted the business for non-payment of rent, but without notice and the opportunity to cure. *Id.* at 37-43. These allegations, regardless of the federal constitutional or statutory provision under which they might be brought, are time-barred.

## STATUTES OF LIMITATIONS

The statute of limitations for claims brought under 42 U.S.C. § 1981 is four years. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004); 28 U.S.C. § 1658. Assuming Plaintiff's First Amended Complaint relates back to the initial complaint mailed from the Spokane County Jail on August 9, 2018, ECF No. 1-2, *see Houston v. Lack,* 487 U.S. 266, 270-71 (1988) (the "mailbox rule" provides that a legal document is deemed filed on the date a litigant delivers it to the prison authorities for filing by mail), then the relevant date for Plaintiff's 42 U.S.C. § 1981 claims is August 9, 2014. Any § 1981 claims preceding August 9, 2014, are time-barred.

Washington's three-year statute of limitations for personal injury actions, RCW 4.16.080(2), governs claims under 42 U.S.C. § 1982. *See Mitchell v. Sung*, 816 F.Supp. 597, 600 (N.D.Cal. 1993) ("Because section 1982 does not have a statute of limitations, courts apply the applicable state statute of limitations.").

The applicable statute of limitations for § 1983 claims under Washington law is also three years. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002); *Millay v. Cam*, 135 Wash.2d 193 (1998) (requiring "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff," for equitable tolling to apply). Similarly, Washington's three-year statute of limitations also governs claims brought pursuant to 42 U.S.C. § 1985(3). *See Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (per curiam) (applying California's analogous statute of limitations). Any §§ 1982, 1983, and 1985(3) claims preceding August 9, 2015, are time-barred.

A one-year statute of limitations applies to claims under § 1986. 42 U.S.C. § 1986. Any § 1986 claims preceding August 9, 2017, are time-barred. Therefore, all of Plaintiff's claims occurring prior to August 9, 2014 are barred by the applicable statutes of limitations and are subject to dismissal.

### FIFTH AMENDMENT DUE PROCESS

The basis for Plaintiff's Fifth Amendment claim is not clear and he fails to provide facts or allegations to support it. The due process clause of the Fifth Amendment states that no person shall be deprived of life, liberty, or property, without due process of law. *See* U.S. Const. Amend V.

"[T]he Fifth Amendment's due process clause only applies to the federal government," not state or local law enforcement officials. *Bingue v. Prunchak*, 512

F.3d 1169, 1174 (9th Cir. 2008); *see also Castillo v. McFaddan*, 399 F.3d 993, 1002 n. 5 (9th Cir. 2005) ("[Plaintiff's] citation of the Fifth Amendment was, of course, incorrect. The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."). Therefore, Plaintiff may not proceed against the named Defendants under the Fifth Amendment.

## THIRTEENTH AMENDMENT

The basis for a Thirteenth Amendment claim is also unclear. The Thirteenth Amendment expressly allows states to compel labor "as a punishment for crime whereof the party shall have been duly convicted." U.S. Const. Amend. XIII, § 1. The Thirteenth Amendment prohibits "peonage - a condition in which the victim is coerced by threat of legal sanction to work off a debt to a master." *United States v. Kozminski*, 487 U.S. 931, 943 (1988) (*citing Clyatt v. United States*, 197 U.S. 207, 215, 218 (1905)). Plaintiff offers no facts from which the Court could infer that identified Defendants subjected him to involuntary servitude. *Kozminski,* 487 U.S. at 944. Therefore, he has failed to state a Thirteenth Amendment claim upon which relief may be granted.

## PLAINTIFF'S ALLEGATIONS

Plaintiff claims Defendants engaged in a "custom and policy of discrimination and in conspiracy and retaliation against the Plaintiff for exercising his rights to

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 6

pursue [an] occupation, and contract to sell goods to his black patrons and provide entertainment to his predominately black patrons, and the use of real property" by engaging in actions described in twelve numbered paragraphs as summarized below.

(1) Defendant Officer Michael Roberge drafted a letter in early May 2016, objecting to the issuance of a liquor license for Plaintiff's business, the Spokane Downtown Daiquiri Factory. ECF No. 20 at 10 and 13.

(2) The letter contained allegedly false statements and inaccurate call for service data and was released to the local media. *Id.* at 13.

(3) Supervisors refused to correct the unspecified false information when it was brought to their attention. Plaintiff claims the allegedly false statements were motivated by "personal bias against the drink names" and "their own campaign of harrassment [sic] towards the plaintiff himself, and of the large crowds of black patrons who attended the business." *Id.* at 13.

(4) Defendant Michael Roberge did not timely issue an entertainment license (necessary to play music and have a D.J.) on June 7, 2016, and then denied the entertainment license on June 15, 2016. *Id.* at 14 and 22. Plaintiff claims the withholding of the license was then used as a reason to deny the license. *Id.* at 22.

(5) Defendant Roberge completed an incident report on 6/17/16 "attempt[ing] to reconcile events that happened from 6/8/16 to 6/15/16 to justify the denial of

the entertainment license" based on complaints from several officers but none from the "actual public." *Id.* at 14. Plaintiff claims "Officer Michael Roberge and the Spokane Police Department withheld the issuance of the entertainment license specifically to delay the business from opening, and impede the location from playing 'loud music' codeword for Hip Hop music catering to black patrons." ECF No. 20 at 14. He complains they provided "no warning or reason for the delay, and then proceeded to deny the license simply because the business was open and in-compliance with law and had paid and submitted the application and $300.00 fee and had no violation of its entertainment licenses during its 2014 previous operations." *Id.* at 15.

(6) Defendant Roberge allegedly took offense to Plaintiff's public accusations of being "racist and discriminatory" and "confronted" Plaintiff at his business on June 25, 2016, and "intimidate[d]" him by asking when Plaintiff would be getting licenses, knowing his own objections were the reasons for the delays. *Id.* at 15.

(7) On June 29, 2016, the Spokane City Prosecutor's Office advised Defendant Roberge to "fix" a citation, after it was announced on June 27, 2016, that a

hearing on the denial of the entertainment license would be held in July 2016.[1] Plaintiff contends "Defendants conspired to write actual 6/29/16 citations to relate back to a 6/15/16 citation to justify the denial of the entertainment license." *Id.* at 16.

(8) Defendant Roberge completed a "supplemental police report" on June 29, 2016, which contained three citations and was allegedly a "conspiracy to selectively prosecute the plaintiff intentionally to close the business down. *Id.* at 16.

(9) Plaintiff alleges the City of Spokane took no action regarding ethics complaints he filed on June 30, 2016. *Id.* at 16. He states this was because of a "custom and policy" of failing to include "compliance with the City of Spokane Code of Ethics" in a Collective Bargaining Agreement, which allegedly created a "custom and policy" of not enforcing the ethics code

---

[1] On December 11, 2018, the Court received Mr. Pendleton's "Declaration" regarding the alleged "fixing" of a citation to deprive Plaintiff of an entertainment license. ECF No. 22. It includes several attachments which were already included with the First Amended Complaint, as Exhibit J, ECF No. 20 at 83-89, Exhibit D, *Id.* at 52-54, Exhibit C, *Id.* at 44-46, Exhibit F, *Id.* at 61-64, and Exhibit I, *Id.,* at 75-76.

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 9

against the police department and its employees. *Id.* at 16-17. Plaintiff claims this resulted in "deliberate indifference to the plaintiff and the plaintiff[']s business." *Id.* at 17. Plaintiff also claims that he was disliked for his political activity of attempting to recall the mayor due to the police department allegedly harassing Plaintiff and his patrons in 2014, and because he had successfully reversed the wrongful eviction of his business. *Id.* at 17. Plaintiff also asserts unspecified "Defendants were allowed to continue to conspire and discriminate against the Plaintiff and continue to do so to discourage his efforts to pursue [an] occupation, and use of real property by denying licenses, and causation of investigations to delay and impede licenses, and falsified police reports and incident reports." *Id.* at 17-18. In addition, Plaintiff complains that after he filed several ethics complaints he was "silenced by investigations and search warrants filed by Spokane Police Department in retaliation." *Id.* at 22. Plaintiff also asserts he was "treated differently than similarly situated leaseholders, similarly situated employees of nightclubs and bars, similar[ly] situated business[es], deliberately and intentionally by the Defendants." *Id.*

(10)     Plaintiff complains that between July 2016 and April 2017, Defendant Roberge generated several police reports against Plaintiff. *Id.* at 18. He claims Defendant Roberge "induced" Defendant Detective Stacey Carr to

"assist him in several investigations and several search warrants." *Id.* He complains that several of Defendant Roberge's reports were based on statements from Plaintiff's landlord with whom Plaintiff was litigating a fee award. *Id.*

(11)     Plaintiff asserts that after the Court of Appeals notified Plaintiff and his landlord on April 24, 2017, and apparently made a public announcement that a hearing was set regarding the appeal of the fee award in June 2017, Defendant Spokane County Prosecutor Casey Evans filed an information against Plaintiff on April 26, 2017. *Id.* at 18. Plaintiff alleges that this was done "deliberately and intentionally to impede the Plaintiff in his civil appeal, and to impede any attempt to re-open or re-apply for licensing of the business." *Id.* at 19. Plaintiff claims that this was a continuation of the "custom and policy" to conspire to selectively prosecute him and impede his efforts to reopen his business and collect damages against his landlord. *Id.* He contends that Defendants Roberge and Carr "induced" Defendant Evans to "participate" in this alleged conspiracy by filing the information against Plaintiff. *Id.* Plaintiff complains that he was subjected to a $100,000.00 bond and detention, and a warrant was issued on April 27, 2017. *Id.*

(12)     Plaintiff complains that on June 5, 2017, Defendants Jacob Kuhn and Brenda Nelson sent emails to officials in Idaho for a "Governor's Warrant to

extradite Plaintiff from Idaho." *Id.* at 20. Plaintiff then accuses Defendants Kuhn and Nelson of presenting "falsified documents" on June 26, 2017, when they provided a cover letter authored by Defendant Lawrence Haskell and a "blank Governors Warrant." *Id.* Plaintiff asserts this was in an "attempt to gain interstate custody" and manipulate another state agency to detain Plaintiff. *Id.* Plaintiff complains that he was detained for 90 days awaiting a Governor's warrant and that during this time Defendants "abandoned the Governor's Warrant process completely and initiated interstate detainer proceedings, subjecting Plaintiff to further legal proceedings." *Id.*

## PLAINTIFF'S COUNTS

Plaintiff brings four Counts in his First Amended Complaint. ECF No. 20 at 23-24.

**Count 1:**

Violations of 42 U.S.C. §§ 1981, 1982 and 1985, and the Fourteenth Amendment due to "actions done in retaliation to silence the plaintiff and custom and policy to target the plaintiff, the plaintiff drink products, and the plaintiff for welcoming African Americans, who enjoy 'loud music' (Police code word for black music)." *Id.* at 23.

//

//

**Count 2:**

Violations of his Due Process rights under the Fifth and Fourteenth Amendments because "Defendants perverted and abused the police powers invested in them for the purpose of destroying plaintiff personally, plaintiff's businesses and products without legally valid justification. Acted so as to stigmatize and harass plaintiff without any lawful basis and without due regard to the truth of statements made about plaintiffs [sic] to public and press and acted to wrongfully deprive plaintiff of the use of their [sic] property, right to pursue legitimate commercial endeavors, and right to seek occupations." *Id.* at 24.

**Count 3:**

Violations of Fifth and Fourteenth Amendment rights and 42 U.S.C. §§ 1981, 1982, 1983 and 1985 when Defendants "conspired to target plaintiff for prosecution as a form of retaliation for speaking out about the discrimination and violations of civil rights publically [sic] on social media and to city officials." *Id.* at 24.

**Count 4:**

State law claims of defamation and tortious interference with business relationships. *Id.* at 24.

## FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

The Fourteenth Amendment's guarantee of procedural due process protects individuals from erroneous or unjustified deprivations of life, liberty, or property,

and assures them that the government deals with them fairly. *Carey v. Piphus*, 435 U.S. 247, 259 (1978). It is not clear which factual allegations Plaintiff intends to support a due process claim. He seems to allege interference with obtaining licenses when he attempted to re-open his business in 2016 and 2017. He complains that objections to the issuance of a liquor license were also released to the local news media.

"To state a procedural due process claim, [a plaintiff] must establish that he had a protectable property interest in his proposed application and, if so, that he was denied this property right without the process which was due under the circumstances." *Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988); *see also Knudson v. Ellensburg*, 832 F.2d. 1142, 1145 (9th Cir. 1987) (explaining that in a procedural due process case a court must first determine whether a liberty or property interest exists entitling the individual to due process).

"[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (*citing Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462–63 (1989)). An applicant does not have a property interest in the renewal of a license if the reviewing body has discretion to deny renewal or to impose licensing criteria of its own creation. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164–65 (9th Cir. 2005).

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 14

Here, Plaintiff alleges no facts from which the Court could infer that either an application for a liquor license or an entertainment license is a protectable property right in the State of Washington. In any event, Plaintiff has alleged facts indicating that there was a review process for the applications and an appeal process for their denial. He has alleged no facts from which a due process violation could be inferred.

## 42 U.S.C. § 1981

In a case brought under 42 U.S.C. § 1981, like the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show "intentional" or "purposeful" racial discrimination. *Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 538 (9th Cir. 1982) (employment discrimination action brought pursuant to 42 U.S.C. § 1981); *see also Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982) (section 1981 can be violated only by purposeful discrimination).

Section 1981 provides for equal rights under the law, as follows:

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981. A claim of intentional discrimination under § 1981 requires allegations that the Plaintiff: (1) is a member of a protected class; (2) attempted to contract for certain services; (3) was denied the right to contract for those services; and (4) either was deprived of services while similarly situated persons outside the protected class were not, or received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory. *Lindsey v. SLT L.A., LLC,* 447 F.3d 1138, 1145 (9th Cir. 2006) (adapting the prima facie elements to claims of racial discrimination in non-employment situations).

Although Plaintiff states that he is a member of a protected class, African American, and claims to have been treated differently than similarly situated persons, he offers no factual allegations in support of an equal protection claim. *See Lindsey,* 447 F.3d at 1145-47 (promotors of African American fashion show attempted to contract for a hotel's grand ballroom, were similarly situated to a group holding a bar mitzvah but were given a smaller ballroom). Plaintiff asserts no fact showing the refusal to "make contracts" on a discriminatory basis.

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 16

"A 1981 claim must be based upon a contractual relationship." *Patterson v. McClean Credit Union*, 491 U.S. 164, 171 (1989), *superceded by statute on other grounds as recognized in CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008). Plaintiff has not identified any potential contractual relationships in 2016 and 2017, within the statute of limitations, or alleged facts showing that he was denied the benefits of these contracts because of his race.

Again, Plaintiff seems to allege interference with his ability to obtain a liquor license and an entertainment license to re-establish his business in 2016. An individual, however, cannot assert contractual claims belonging to a business. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) ("Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's."). Plaintiff apparently was not an applicant to the liquor license for Spokane Downtown Daiquiri Factor in 2016, ECF No. 20 at 54, and therefore, would not be able to challenge actions which allegedly delayed the issuance of the liquor license.

Further, the issuance of liquor licenses is highly regulated in Washington State, and it is not clear that either an individual or business can be said to be in a "contractual relationship" with a state regulatory board. *See Domino's Pizza, Inc.*, 546 U.S. at 479-80 ("a plaintiff cannot state a claim under § 1981 unless he has (or

would have) rights under [an] existing (or proposed) contract that he wishes 'to make and enforce.'").

Plaintiff asserts a police officer submitted objections to a liquor license, and then allegedly initially denied an entertainment license in June 2016, with backdated citations to justify the denial, in order to delay the re-opening of the business. Plaintiff claims the officer "took offense" to Plaintiff's public accusations that he was "racist" and "discriminatory" and allegedly "confronted" Plaintiff at the business in late June 2016 and "intimidated" Plaintiff by asking about the licenses, knowing he had contributed to the delay in their issuance. These allegations, taken as true, are insufficient to show either a contractual relationship or intentional racial discrimination to support a claim under 42 U.S.C. § 1981.

Plaintiff has failed to connect these actions with any racially motivated intent. Plaintiff believes that "loud music" is a euphemism for "Hip Hop music catering to black patrons," ECF No. 20 at 14. His speculation, however, is too attenuated for an inference of invidious discrimination based on race. *See e.g. Rivera v. Metro. Transit Auth.*, 750 F.Supp.2d 456, 461–62 (S.D.N.Y. 2010) ("The unstated premise of [plaintiff's] argument is that anything unwelcome that befalls any person who is an identifiable member of a minority group probably occurs because the individual is a member of that group. While racism and all its manifestations are deplorable, the inference that it is present whenever something unwelcome happens to a member

of an identifiable minority group is not rational. There is no evidence that anything that any defendant may have done was motivated, even in part, by an intention to discriminate on the basis of race."). Plaintiff indicates that he appealed the denial of the entertainment license and was granted a hearing in July 2016.

Plaintiff claims that in April 2017, a prosecutor filed criminal charges against him, allegedly to impede Plaintiff's civil appeal with the business landlord, and the re-opening and re-application of licenses for the business. To the extent Plaintiff is asserting interference with his right "to sue, be parties, give evidence . . .," under 42 U.S.C. § 1981, he presents no allegations from which the Court could infer the prosecutor brought charges because of Plaintiff's race and without support in law and fact.

To prevail on a § 1981 claim against a local government entity, a plaintiff must prove that the entity violated his constitutional rights by acting pursuant to an official municipal policy. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691-94 (1978); *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d at 1215-16. Here, Plaintiff claims the Spokane Police Department had a custom and policy of "abuse of police power to intentionally and deliberately discriminate and selectively prosecute the Plaintiff." ECF No. 20 at 12. He also broadly asserts a custom and policy of discrimination. *Id.* at 13.

Plaintiff claims the City of Spokane had a "custom and policy" of failing to require compliance with its "Code of Ethics" in a Collective Bargaining Agreement with the police department which allegedly resulted in "deliberate indifference to the plaintiff and the plaintiff['s] business." Id. at 16-17. Municipal "[l]iability may attach ... only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (*quoting Monell*, 436 U.S. at 694). Plaintiff's conclusory assertions are insufficient to show an official municipal policy caused an equal protection violation. Plaintiff has failed to state a claim under 42 U.S.C. § 1981 upon which relief may be granted.

## 42 U.S.C. § 1982

42 U.S.C. § 1982 provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Plaintiff has not alleged facts showing a racially motivated refusal to sell or rent him real estate in violation of 42 U.S.C. § 1982. He indicates that he utilized the courts of Washington State to sue for wrongful eviction in 2014 and received a ruling in his favor. ECF No. 20 at 17, 23. The Court is unable to infer a violation

of 42 U.S.C. § 1982 from the facts alleged. *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987) (claim of racially discriminatory interference with property rights under section 1982 based on desecration of congregation's synagogue).

## 42 U.S.C. § 1985

Plaintiff does not specify under which clause of 42 U.S.C. § 1985 he is asserting a claim or identify which facts support such a claim. Neither section 1985(1) (i.e., preventing a federal officer from performing official duties), nor the first clause of § 1985(2) (i.e., conspiracy to obstruct justice in federal courts/witness intimidation) appear applicable to the facts presented in the First Amended Complaint. Likewise, the second clause of § 1985(3) (i.e., involving the right to support candidates in federal elections) also appears inapplicable. *See Kush v. Rutledge,* 460 U.S. 719 724 (1983).

The second clause of § 1985(2) provides a cause of action if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

This clause concerns "conspiracies to interfere with justice in the state courts 'with intent to deny any citizen' '*due and equal protection* of the laws[.]'" *Bretz v. Kelman,* 773 F.2d 1026, 1028 (9th Cir. 1985) (quoting statute; emphasis in *Bretz*).

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 21

The first clause of § 1985(3) provides a cause of action if:

two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . .

Like 42 U.S.C. § 1983, 42 U.S.C. § 1985(3) does not create any substantive rights; but serves only as a vehicle to vindicate federal rights and privileges which have been defined elsewhere. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979).

To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person of equal protection or the equal privileges of the law; (3) an act in furtherance of the conspiracy; and (4) a deprivation of a right or privilege of United States citizenship, or injury to the person or his property. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). The conspiracy must be motivated by some racial invidiously discriminatory animus. *See Kush v. Rutledge*, 460 U.S. at 726 (*citing Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)); *see also Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001).

Apart from his conclusory assertions, Plaintiff has failed to present facts showing a conspiracy, that is, "an agreement or 'meeting of the minds' by

[D]efendants to violate his constitutional rights." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989). Plaintiff complains that citations were used to justify the denial of an entertainment license in June 2016 but indicates a hearing regarding the denial of the license was set for July 2016. *Id.* at 14-17. He does not state the outcome of the hearing, but indicates he was "eligible" to re-apply for licenses in April 2017. *Id.* at 19. Plaintiff alleges no facts from which it could be inferred the citations were fabricated or baseless.

Plaintiff also asserts that an officer "induced" a detective to investigate Plaintiff and to obtain search warrants over a nine-month period, and then "induced" a county prosecutor to file a criminal information which was issued just after it was publicly announced that a hearing in a civil appeal with Plaintiff's landlord would be held several months later. Plaintiff complains this subjected him to bond and detention. Vague and conclusory assertions of conspiracy, however, are insufficient to state a constitutional claim. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Furthermore, Plaintiff's factual allegations do not show a conspiracy motivated by animus against African Americans. To establish racial or class-based animus, a plaintiff must show "invidiously discriminatory motivation . . . behind the conspirators' action." *Griffin*, 403 U.S. at 102, *holding limited by Kush v. Rutledge*, 460 U.S. at 726; *Bretz,* 773 F.2d at 1030 (extending *Griffin* requirement to second

clause of section 1985(2)).  Apart from Plaintiff's conclusory assertions, the Court is unable to infer racial animus from the facts presented.  *See Usher v. City of Los Angeles,* 828 F.2d 556, 561-62 (9th Cir. 1987) (racial slurs directed at arrestee were sufficient to demonstrate racial animus).

Plaintiff has alleged no facts from which the Court could infer his detention was unlawful, that police reports were fabricated, or search warrants were unsupported by probable cause.  He alleges only that he was the subject of criminal investigations and search warrants for a nine-month period.  He presents no facts from which the court could infer the investigation was conducted in a biased fashion due to race.

Plaintiff's bare and conclusory allegations do not support an inference of malicious prosecution intended to deprive Plaintiff of the equal protection of the laws.  He alleges no facts from which it could be inferred that the prosecution has no reasonable expectation of obtaining a valid conviction.  Plaintiff has failed to state a claim under 42 U.S.C. § 1985 upon which relief may be granted.

## RETALIATION

Although not specifically presented as a claim, Plaintiff asserts retaliation throughout his First Amended Complaint.  He claims unspecified actions were taken "in retaliation" and to "silence" him, and he was prosecuted "in retaliation" for making public accusations of discrimination and civil rights violations.  ECF No. 20

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 24

at 24.  He appears to bring these accusations under 42 U.S.C. § 1983.  *Id.* § 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998).  Plaintiff accuses Defendant Officer Roberge of inducing Defendant Detective Carr to join an investigation of Plaintiff and to obtain search warrants over a nine-month period.  He then accuses Defendants Roberge and Carr of inducing Defendant County Prosecutor Case Evans to file an unspecified criminal information against Plaintiff on April 26, 2017. Without factual allegations showing the absence of probable cause to prosecute, however, Plaintiff has failed to state an actionable violation of the First Amendment. *See Hartman v. Moore,* 547 U.S. 250, 252 (2006).  This claim is subject to dismissal.

## EXTRADITION ALLEGATIONS

Plaintiff accuses two administrative personnel from the Spokane County Prosecutor's Office of emailing information to Idaho officials, including a cover letter authored by Defendant Lawrence Haskell and a "blank Governors Warrant." ECF No. 20 at 20.  The Court cannot infer a federal constitutional or statutory violation from these alleged facts.  The administrative act of relaying information does not raise constitutional or federal statutory concerns.

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 25

Plaintiff does not state that he was extradited or what became of any detainer proceeding. He presents no facts, other than his conclusory assertions, from which the Court could infer that his detention in Idaho over a 90-day period in 2017 was unlawful or unconstitutional entitling him to monetary damages against identified Defendants.

Furthermore, Plaintiff's accusation that Defendant Larry Haskell authored a cover letter which was attached to a blank warrant will not lower the shield of absolute prosecutorial immunity. *See e.g., Fullman v. Graddick,* 739 F.2d 553, 558-59 (11th Cir. 1984) (prosecutor is entitled to immunity even when she knowingly uses perjured testimony, files an information without an investigation, files charges without jurisdiction, files a baseless detainer, or threatens a criminal defendant with further prosecution, among other things). Plaintiff has failed to state a claim against Defendants Kuhn, Nelson and Haskell upon which relief may be granted.

Although granted the opportunity to do so, Plaintiff has failed to amend his complaint to state a claim upon which relief may be granted by this Court. Therefore, his federal constitutional and statutory claims are subject to dismissal pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2). In the absence of a federal claim the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3).

//

## OPPORTUNITY TO AMEND

Unless it is absolutely clear that amendment would be futile, a *pro se* litigant must be given the opportunity to amend his complaint to correct any deficiencies. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute*, 28 U.S.C. § 1915(e)(2), *as recognized in Aktar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). This is Plaintiff's Second Complaint in this action alone. *See* Case Numbers 2:18-CV-0243, 2:18-CV-0267, 2:18-CV-0386. In dismissing Plaintiff's previous complaint, the Court identified the deficiencies and granted Plaintiff leave to amend. At this time, the Court finds that it is absolutely clear that no amendment will cure the deficiencies in Plaintiff's claims. Therefore, the Court dismisses Plaintiff's FAC without prejudice.

## REVOCATION OF IN FORMA PAUPERIS STATUS

Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one, and good faith is demonstrated when an individual "seeks appellate review of any issue not frivolous." *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court finds that any appeal of this Order would not be taken in good

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 27

faith and would lack any arguable basis in law or fact. Accordingly, the Court hereby revokes Plaintiff's *in forma pauperis* status.

If Plaintiff seeks to pursue this matter again in the district court or on appeal, he must pay the requisite filing fee.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. The First Amended Complaint, ECF No. 20, is **DISMISSED**.

2. This dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

3. All pending motions are denied as moot and hearing deadlines are stricken.

4. Plaintiff's *in forma pauperis* status is revoked.

5. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith.

The Clerk of Court is directed to enter this Order, enter judgment, provide copies to Plaintiff at his last known address, and **CLOSE** the file.

**DATED** January 24, 2019.

THOMAS O. RICE
Chief United States District Judge

ORDER DISMISSING FIRST AMENDED COMPLAINT ~ 28